2025 UT App 190

# THE UTAH COURT OF APPEALS

GUSTAVO CALLASPO BRITO,
Appellant,
*v.*
DUSTIN JAMES BALLHEW,
Appellee.

Opinion
No. 20240739-CA
Filed December 26, 2025

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 210906133

Daniel F. Bertch, Attorney for Appellant

Bruce C. Burt, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES DAVID N. MORTENSEN and AMY J. OLIVER
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Gustavo Callaspo Brito sued Dustin James Ballhew for injuries resulting from a traffic accident. Following deliberations, the jury returned an incomplete verdict form: the jury allocated 70% fault to Ballhew but failed to award damages. After a sidebar with the parties' attorneys, the district court informed the jury that it had likely switched the allocation of fault and instructed the jury to re-deliberate. Shortly thereafter, the jury returned a corrected verdict in which it changed the allocation of fault in accordance with the court's instruction and this time assessed 70% fault to Callaspo, resulting in a no cause verdict.

¶2 Callaspo appeals. He argues the district court abused its discretion when it re-instructed the jury because the instructions

were not fair and neutral. We agree and accordingly vacate the verdict and remand for a new trial.

BACKGROUND

¶3     Ballhew was driving westbound. As he approached a traffic light, he attempted to turn left. At this same time, Callaspo was driving eastbound straight through the intersection. Ballhew's vehicle crashed into the front of Callaspo's car on the driver side.

¶4     In November 2021, Callaspo sued Ballhew for injuries resulting from the collision. In June 2023, the parties stipulated that the case would proceed through arbitration pursuant to Utah Code section 31A-22-321 (section 321). *See* Utah Code § 31A-22-321(1) ("A person injured as a result of a motor vehicle accident may elect to submit all third-party bodily injury claims to arbitration . . . ."). Following arbitration, the arbitrator found that Callaspo had failed to meet his burden of proof and accordingly awarded Ballhew a judgment of no cause of action. Thereafter, Callaspo filed a motion for trial de novo.

¶5     A two-day jury trial was held in March 2024. Both parties testified and both also called experts to evaluate the crash data and opine as to the cause of the accident. After the close of evidence, the district court instructed the jury on fault and fault allocation by reading the instructions from the verdict form. The court explained that the jury was to assign a percentage of fault to each party, and that the total percentage assigned must equal 100%. It then instructed that if Callaspo's fault was less than 50%, the jury would need to fill out the next section on the form titled "Damages."

¶6     Following deliberations, the jury returned the verdict form to the district court. After reviewing the form, the court asked counsel to approach the bench for a sidebar. The court informed

counsel that "there may have been a misunderstanding on the jury," because although the jury had allocated 30% of the fault to Callaspo and 70% of the fault to Ballhew, it had not completed the damages portion of the form. The court then told counsel that it was "going to ask" the jury about the apparent misunderstanding.

¶7      After concluding the sidebar, the district court addressed the jury:

> Ladies and gentlemen of the jury, I've reviewed your special verdict form. And there raises a question about whether or not I was clear in the jury instructions because there appears to be an inconsistency in your responses.
>
> And so what we're going to do is try to clarify the issue of apportionment to make sure that what you have reflected in your verdict form is the way you want it to be. Otherwise, we're going to have to maybe send you back into the jury room in order to perform some calculation on damages. Okay? Because I think there might be a confusion.
>
> For example, in reading off the special jury verdict form, it says, Question number 5: "What percentage of the fault that caused . . . Plaintiff's harm was attributable to the Defendant?" And you put "70 percent."
>
> Question number 6 says, "What percentages of Plaintiff's harm was caused by the Plaintiff?" And you put "30 percent." Okay?
>
> Now, under the section of damages, though, there is nothing filled out in regard to medical expenses and noneconomic damages. So I'm not sure if you intended not to award any damages or if

there was a misunderstanding about the 50 percent rule.

If you were understanding question number 5 to mean that you were giving 70 percent of the fault to the Plaintiff for the accident, then he would have been over the threshold of 50 percent. And then there would be no further damages needed to be calculated or awarded. And that's the way that I'm reading it.

So we need to ask you if you would like to go back in and deliberate with that understanding and see if your percentages need to change or not. And if not, you're going to need to perform and make a deliberation on the amount of damages. Does that make sense?

Why? Because we had an undisputed agreement as to the amount of damages that are there in this case. And you've awarded none. And the only explanation for that is you maybe misinterpreted question six—or five and six on how you have the allocation of the percentages. I'm not sure, but I'm guessing maybe you switched the allocations of your percentages, though I'm not sure.

So what we're going to do is we're going to give you the special verdict form back. We're going to ask you to go back into the jury room and address those issues that we've highlighted for you.

¶8    After the jury exited the courtroom, Callaspo objected to the district court's instruction, arguing that it "was very prejudicial" to suggest to the jury that it had "mixed" up the fault allocations rather than "just pointing out the error" and sending

the jury to re-deliberate. The court countered that it had "no intention to try to influence the jury one way or the other" and that it had merely tried "to explain the different possibilities or the different contradictions that were apparent on the face of the document."

¶9     Less than ten minutes after being sent to re-deliberate, the jury returned the final verdict form. This time, the jury allocated 70% of the fault to Callaspo and 30% of the fault to Ballhew.

### ISSUES AND STANDARDS OF REVIEW

¶10    Callaspo now appeals, arguing the district court improperly instructed the jury after determining that the verdict was insufficient. "When reviewing a trial court's decision to clarify a jury verdict we seek to determine whether the trial court exceeded its permitted range of discretion." *Eggett v. Wasatch Energy Corp.*, 2001 UT App 226, ¶ 17, 29 P.3d 668, *aff'd*, 2004 UT 28, 94 P.3d 193.

¶11    In response to Callaspo's appeal, Ballhew argues that this court does not have jurisdiction to consider this appeal because the only appeal permitted after a section 321 arbitration hearing is a trial de novo. "Whether appellate jurisdiction exists is a question of law, which we review for correctness." *Park City Mun. Corp. v. Woodham*, 2024 UT 3, ¶ 13, 545 P.3d 221 (quotation simplified).

### ANALYSIS

### I. Jurisdiction

¶12    As a threshold matter, we must determine whether we have jurisdiction to consider this appeal. Ballhew argues that Callaspo has no right to appeal from the district court's judgment because "the only appeal permitted after a [section 321]

arbitration hearing is the trial de novo." Ballhew acknowledges that this argument is not supported by statute or case law but is instead premised on the appeals process from a small claims action. He urges us to treat appeals following section 321 proceedings the same as small claims appeals—by generally limiting appeals to a trial de novo in the district court. *See* Utah Code §§ 78A-8-106, 78A-5-102(4). But the right to appellate review is governed by statute, and we are not at liberty to adopt a scheme clearly at odds with the plain language of the controlling provisions.

¶13    Utah Code section 78A-8-106 governs appeals from small claims actions. Under that section, either party may appeal the judgment in a small claims action to the district court for a trial de novo. *See id.* § 78A-8-106. The statute specifically provides that "[t]he decision of the trial de novo *may not be appealed* unless the court rules on the constitutionality of a statute or ordinance." *Id.* § 78A-8-106(2) (emphasis added). Thus, the controlling statute clearly prohibits appeals from a trial de novo in small claims actions except for in the narrow circumstances where the constitutionality of a statute or ordinance is at issue.

¶14    In contrast, section 321 governs arbitration proceedings in third-party litigation. Under that section, a plaintiff may elect to submit a personal injury claim to "binding arbitration" in exchange for capping any potential recovery. *See id.* § 31A-22-321(1)–(2). A claim may not be submitted to arbitration, however, unless the plaintiff or the plaintiff's representative has "previously and timely filed a complaint in a court that includes a third-party bodily injury claim" and "filed a notice to submit the claim to arbitration within 14 days after the complaint has been answered." *Id.* § 31A-22-321(1)(a). After a claim is submitted to arbitration, any award issued from those arbitration proceedings "shall be the final resolution of all bodily injury claims between the parties and may be reduced to judgment" unless either party "files a notice requesting a trial de novo in the court" or "the arbitration award has been satisfied." *Id.* § 31A-22-321(11). Once a

request for a trial de novo has been filed, "the claim shall proceed through litigation in accordance with the Utah Rules of Civil Procedure and Utah Rules of Evidence." *Id.* § 31A-22-321(12)(a).

¶15   The Utah Supreme Court has appellate jurisdiction over "orders, judgments, and decrees of any court of record over which the Court of Appeals does not have original appellate jurisdiction."[1] *Id.* § 78A-3-102(3)(j). District courts "are courts of record," whereas justice courts "are courts not of record." *Id.* § 78A-1-101(2). "Except as otherwise provided by law, a party may appeal a final order or judgment from a district court . . . to the appellate court by filing a notice of appeal with the trial court clerk . . . ." Utah R. App. P. 3(a)(1).

¶16   Construing all of this together, we conclude that Callaspo has a statutory right to appeal. Here, Callaspo appeals from a judgment of the district court. Although the claim was subject to a section 321 arbitration proceeding prior to the district court judgment, there is nothing in the plain language of section 321 that restricts a losing party from appealing a district court judgment following arbitration.

¶17   Moreover, this conclusion is bolstered by the statutory scheme of section 321, which treats arbitration proceedings as something different from district court proceedings. Section 321 requires as a prerequisite to submitting a claim to arbitration that the claim be included in a timely filed complaint in a court with jurisdiction, *see* Utah Code § 31A-22-321(1)(a), and it further contemplates that the case may resume in the court if either party is dissatisfied with the arbitration award, *see id.* § 31A-22-321(11). In other words, any proceedings in the district court following

---

1. Barring certain exceptions not at issue in this case, the Utah Supreme Court "may transfer to the Court of Appeals any of the matters over which the Supreme Court has original appellate jurisdiction." *See* Utah Code § 78A-3-102(4). This case was so transferred.

failed arbitration simply *resume* the litigation of the case that had already begun in district court; the arbitration award is put aside, discovery commences, the relevant rules of procedure and evidence control, and the parties may request—for the first time—a jury trial. *See id.* § 31A-22-321(12). This procedure is inapposite to the appeals process involved in a small claims action, where the controlling statute specifically provides that "unless the court rules on the constitutionality of a statute or ordinance," "[t]he appeal is a trial de novo." *See id.* § 78A-8-106(2).

¶18 Because we have jurisdiction to hear this appeal, we now proceed to consider the merits of Callaspo's argument.

## II. Inconsistency in the Verdict Form

¶19 After reviewing the initial verdict form, the district court concluded that the verdict was inconsistent. To remedy this problem, the court elected to re-instruct the jury. On appeal, Callaspo argues that the court abused its discretion in the manner in which it re-instructed the jury because the instructions "suggest[ed] an outcome" and "encourag[ed] the jury to change its prior findings." We agree.

¶20 Rule 47(s) of the Utah Rules of Civil Procedure provides that an "informal or insufficient" jury verdict "may be corrected by the jury under the advice of the court, or the jury may be sent out again." District courts are given discretion to determine whether a verdict is informal or insufficient,[2] *see KTM Health Care Inc. v. SG Nursing Home LLC*, 2018 UT App 152, ¶ 37, 436 P.3d 151,

---

2. "'Insufficient' means inadequate or lacking in some requirement, purpose or use. 'Informal' means defective in form; not in the usual form or manner; [or] contrary to custom or prescribed rule." *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 26, 94 P.3d 193 (quotation simplified). An incomplete verdict is both insufficient and informal. *See Langton v. International Transport, Inc.*, 491 P.2d 1211, 1214 (Utah 1971).

and "as long as the jury that rendered the verdict remains empaneled," the court may seek clarification from the jury regarding any perceived inconsistency, *id.* ¶ 39. If a "court orders a jury to re-deliberate regarding an inconsistency, the court should explain to the jury the reasons it is being asked to resume deliberations but must do so in a completely neutral and impartial way." *Id.* ¶ 45. "[T]he court must take pains to remain neutral, and to make sure that nothing in the court's communications to the jury about the inconsistency could possibly be construed as encouraging the jury to reach a particular result after re-deliberation." *Id.* ¶ 44.

¶21 Here, the district court informed the jury that the verdict was "inconsisten[t]" because although the jury had allocated 30% of the fault to Callaspo and 70% of the fault to Ballhew, there was "nothing filled out" "under the section of damages." The court explained that the jury needed to either "clarify the issue of apportionment" or "perform some calculation on damages." All of these statements were neutral and impartial. But after highlighting this inconsistency in general terms, the court gave additional pointed guidance:

> If you were understanding . . . that you were *giving 70 percent of the fault to* [*Callaspo*] for the accident, then he would have been over the threshold of 50 percent. And then there would be no further damages needed to be calculated or awarded. And *that's the way that I'm reading it*.
>
> So we need to ask you if you would like to *go back in and deliberate with that understanding* and see if your percentages need to change or not. And if not, you're going to need to perform and make a deliberation on the amount of damages. . . .
>
> Why? Because we had an undisputed agreement as to the amount of damages that are

> there in this case. And you've awarded none. And *the only explanation for that is you maybe misinterpreted . . . how you have the allocation of the percentages. I'm not sure, but I'm guessing maybe you switched the allocations of your percentages . . . .*

(Emphasis added.)

¶22 We agree with Callaspo that the district court did not "explain to the jury the reasons it [was] being asked to resume deliberations . . . in a completely neutral and impartial way." *Id.* ¶ 45. Although the court began by objectively explaining to the jury in general terms what the perceived inconsistency was—the apportionment of fault and the calculation of damages—the court then "plac[ed] its thumb on the scale" and detailed exactly how it perceived the jury had intended to answer those questions. *Id.* ¶ 51. The court repeatedly opined that it was interpreting the verdict form to mean that the jury had simply "switched" the allocation of fault between Callaspo and Ballhew, going as far as to say that was "the only explanation" for the apparent inconsistency. By making these statements, the court overtly "encourag[ed] the jury to reach a particular result after re-deliberation." *Id.* ¶ 44. And the jury's subsequent verdict was indeed reflective of the court's instruction given that the jury simply "switched" the allocations of fault in the corrected verdict.[3] For these reasons, the court abused its discretion when it re-instructed the jury.

---

3. This is not to suggest that the jury could not have corrected the verdict by switching the allocation of fault. As Ballhew notes in his appellate brief, the jury heard testimony supporting that Ballhew crashed into Callaspo after Callaspo ran a red light. But in light of the district court's pointed guidance, we cannot conclude that the corrected verdict was truly reflective of the jury's findings and not influenced by the court.

CONCLUSION

¶23    Because nothing in the text of Utah Code section 31A-22-321 limits a party's right to appeal after an arbitration proceeding, we have jurisdiction to hear this appeal. And because the district court abused its discretion when it re-instructed the jury on the perceived inconsistency in the initial verdict, we vacate the verdict and remand the matter for a new trial.

_____